UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

LORRELL BOYKINS-JENKINS,

           Defendant.

------------------------------------X

09 Cr. 861-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On March 29, 2011, Lorrell Boykins-Jenkins ("Boykins-Jenkins" or "Defendant") pleaded guilty to one count of theft of mail, in violation of 18 U.S.C. § 1708.  For the reasons set forth below, Boykins-Jenkins will be sentenced to 24 months' imprisonment to be followed by two years' supervised release. Boykins-Jenkins will also be required to pay a special assessment of $100.

**Prior Proceedings**

      On September 4, 2009, Indictment 09 CR 861-01 (RWS) was filed in the Southern District of New York.  It charges that on July 8, 2009, in the Southern District of New York, Boykins-

Jenkins opened two packages that were not addressed to her and took the packages' contents, in violation of 18 U.S.C. § 1708.

On March 29, 2011, Boykins-Jenkins appeared before the Honorable Debra C. Freeman in the Southern District of New York and allocuted to her criminal conduct as charged.

Boykins-Jenkins sentencing is currently scheduled for September 26, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed —
>
> > (A)  to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

3

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Boykins-Jenkins' personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Between January 2008 and July 8, 2009, Defendant was employed as a letter carrier for the U.S. Postal Service. She was responsible for delivery of express mail packages from the post office near Times Square in Manhattan.

The investigation of Defendant commenced after the U.S. Postal Service (USPS) received customer complaints from a post office near Times Square in Manhattan. Between January 2009 and June 2009, numerous complaints were received from postal customers in the 10036 zip code that parcels containing

4

jewelry were not delivered.     Most, if not all of the losses, were on Defendants' parcel delivery route.

On July 8, 2009, a U.S. postal inspector arranged for two test parcels, addressed to a person other than Defendant, to be delivered from the 10036 post office to an address in New York City.  The first parcel contained a black jewelry box lined with felt which contained a counterfeit diamond.  The second parcel contained a baby blue jewelry box lined with felt which contained a counterfeit gold necklace lined with counterfeit diamonds.

USPS agents gave the parcels to the customer service supervisor of the post office for delivery. USPS agents observed the supervisor hand the parcels to Defendant, who in turn placed the parcels in a registered mail bag and took the elevator to the ground floor of the post office.

The return address on the parcels was for a jewelry outlet in Virginia.   The parcels were standard, flat-rate express mail envelopes, and were equipped with a letter beacon which is a device that emits a radio signal that can be tracked by USPS agents.   The beacon was positioned in the parcels so

5

that the radio signals would terminate only after the contents of the parcels were removed from the parcels. USPS agents monitored the radio signals emitted from the parcels while conducting surveillance on Defendant.

After exiting the post office with the registered mail bag, Defendant entered a building near Seventh Avenue and 43rd Street, in Manhattan. After leaving the building, Defendant entered a fast-food restaurant on Broadway near Times Square. While Defendant was in the restaurant the radio signal emitted by the beacon terminated. Soon thereafter, Defendant exited the restaurant.

An agent subsequently searched the restaurant and in the trash bin of the second-floor woman's restroom found the parcels which had been opened. Both the counterfeit diamond and the gold necklace that were in the parcels were missing.

After exiting the restaurant, agents observed Defendant use a pay-phone near Seventh Avenue and 44th Street, in Manhattan. Soon thereafter, agents arrested Defendant. Subsequent to a search of Defendant, agents found both counterfeit jewelry items in her front, left pants pocket.

According to the case agent, between December 2008 and July 8, 2009, Defendant stole several precious stones, gold, cash and other valuable items from the mail meant for delivery in Manhattan's diamond district.   Defendant sold several of those items to jewelers in Queens County, NY.   Among other things, Defendant stole a canary diamond worth approximately $80,000; however, Defendant received much less than that when she sold it.

Defendant is responsible for stealing between $70,000 and $120,000 in jewelry and other items.   According to the case agent, there are several victims in this case.

Additionally, Defendant abused her position of public trust as a mail carrier for the U.S. Postal Service by using her access to express mail meant for delivery to the diamond district to steal jewelry and other valuable items and sell them to others.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 1709, the maximum term of

7

imprisonment is five years.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

As a result of committing the offenses alleged in Count 1 of the Indictment, Defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 1963(a)(1), (a)(2), and (a)(3), all property, real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2010 edition of the United States

8

Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for a violation of 18 U.S.C. § 1709 is found in § 2B1.1(a)(2), which provides for a base offense level of 6.

Pursuant to § 2B1.1(b)(1)(E), an increase of eight levels is warranted because the loss amount was more than $70,000 but less than $120,000.

Pursuant to § 2B1.1(b)(2), an increase of four levels is warranted because the offense involved 50 or more victims.

Pursuant to § 3B1.3, an increase of two levels is warranted because Defendant, as an employee of the United States Postal Service, abused a position of public trust by engaging in the theft of undelivered United States mail.

Based on his plea allocution, Defendant has shown

9

recognition of her responsibility for the offense.  Pursuant to § 3E1.1(a), the offense is reduced two levels.  Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 17.

Boykins-Jenkins has no known criminal convictions. Therefore, Defendant has zero criminal history points.  Pursuant to the table at Chapter 5, Part A, of the Guidelines, a total of zero criminal history points establishes a Criminal History Category of I.

Based on a total offense level of 17 and a Criminal History Category of I, the Guidelines range for imprisonment is 24 to 30 months.

The Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a)(2).  If a sentence of imprisonment of one year or less is imposed, a term of

10

supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable Guideline range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note #2.

The fine range for the instant offense is from $5,000 to $50,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.1(a)(1), in the case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is

11

authorized under 18 U.S.C. § 3663A.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

## The Sentence

For the instant offense, Boykins-Jenkins will be sentenced to 24 months' imprisonment and two years' supervised release.

Boykins-Jenkins is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence her term of supervised release. It is recommended that Boykins-Jenkins be supervised by the district of her residence.

As mandatory conditions of his supervised release, Boykins-Jenkins shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device. The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing. The Defendant shall cooperate in the collection of DNA as directed by the Probation Officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition:

(1) Defendant shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using

13

drugs or alcohol.  The Court authorizes the release of available
drug treatment evaluations and reports to the substance abuse
treatment provider, as approved by the Probation Officer.
Defendant will be required to contribute to the costs of
services rendered (co-payment), in an amount determined by the
Probation Officer, based on ability to pay or availability of
third-party payment.

In consideration of all the factors set forth in 18
U.S.C. § 3572(a), it does not appear that the Defendant is able
to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United
States, is mandatory and shall be due immediately.

Although Defendant is being held accountable for
losses totaling between $70,000 and $120,000, the Government has
not provided the Probation Office with a list identifying
specific victims and their specific losses.  Pursuant to 18
U.S.C. § 3664(d)(5), the Court is delaying imposition of an
Order of Restitution for up to 90 days to enable the Government
to provide the Court with specific details regarding the loss
for restitution purposes as well as to identify the victims

14

entitled to restitution.  Defendant shall notify the United

States Attorney for the Southern District of New York within 30

days of any change of mailing or residence address that occurs

while any portion of the restitution remains unpaid.  If

Defendant is engaged in a BOP non-UNICOR work program, Defendant

shall pay $25 per quarter toward the criminal financial

penalties.  However, if Defendant participates in the BOP's

UNICOR program as a Grade 1 through 4, Defendant shall pay 50%

of her monthly UNICOR earnings toward the criminal financial

penalties, consistent with BOP regulations at 28 C.F.R. §

545.11.  Restitution shall be paid in monthly installments of 30

percent of gross monthly income over a period of supervision to

commence 30 days from the release from custody.


       Defendant shall forfeit her interest in the following

property to the United States:


           a. All property that constituted or is derived from

              proceeds obtained as a result of the offense,

              including but not limited to, two matching diamond

              earrings, one silver bracelet, and one gold

              bracelet.

Defendant is viewed as a good candidate for voluntary surrender. She has kept all court appearances and has been in compliance with all terms and conditions of her pretrial release. She is not viewed as a flight risk or a danger to the community.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for September 26, 2011.

It is so ordered.

New York, NY
September 21, 2011

ROBERT W. SWEET
U.S.D.J.

16